UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>WAYNE D. McDUFFIE,<br><br>  Defendant. | No. CR-08-0102-RHW<br><br>**ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS & SUPPRESS** |

The Court held evidentiary hearings on April 3, 2012, and April 9, 2012, taking evidence and testimony on the Defendant's pending motions to dismiss and to suppress. Both motions allege the same type of government misconduct—evidence tampering—but the relevant period of inquiry is not coextensive. Specifically, the Defendant alleges that Detective Barrington conspired with another officer to plant a rock of crack cocaine in the apartment at which the Defendant was staying in order to coerce his testimony in an unrelated criminal trial. Then, in an effort to bolster the fabricated case against the Defendant and/or to cover up his actions, Barrington rubbed cocaine residue on a scale recovered from the apartment and tried to destroy and conceal several documents.

**ORDER DENYING MOTIONS TO DISMISS & SUPPRESS** * 1

To analyze the motion to suppress, based on Franks v. Delaware, the Court is concerned with alleged misconduct only up to April 9, 2008, when Barrington stated in the arrest warrant affidavit for cocaine possession that drugs were found in the apartment. While subsuming these allegations, the motion to dismiss, made on due process grounds, goes beyond the arrest warrant affidavit to include the subsequent alleged cover up.

After considering the parties' briefing, documentary evidence, and oral testimony, the Court finds as follows and denies both motions.

## FACTUAL FINDINGS

On November 30, 2007, Spokane Police Officers Meyer, O'Brien, and Vaughn traveled to an apartment on Ash Street to arrest the Defendant on an unrelated misdemeanor warrant. Barrington, informed by O'Brien and Meyer about the warrant's execution, went along to speak with the Defendant about the murder of Adama Walton. Barrington believed that the Defendant knew more about the murder than he had previously told police. When officers arrived, they knocked on the door. Brenda Armstrong, the Defendant's girlfriend and lessee of the apartment, directed the Defendant to answer. After a short discussion, officers entered the apartment and immediately noted the strong aroma of marijuana permeating the interior. Once inside, Barrington spoke with the Defendant in the living room, adjacent to the front entrance, and Meyer and O'Brien went to the back bedroom where Armstrong was questioned.

At some point Armstrong consented to a search of the premises.[1] In the back bedroom, Meyer found a rock of crack cocaine lying in plain view either near to or on a digital scale, which was disguised as a CD jewel case. Meyer also found plastic baggies, an additional scale, and a quantity of marijuana. These discoveries did not surprise Armstrong, who stated that she and the Defendant were actively dealing crack cocaine at the time. She testified that officers would have had little difficulty

---

[1] The Defendant has not challenged the timing or propriety of the search.

**ORDER DENYING MOTIONS TO DISMISS & SUPPRESS** * 2

deny dismiss 20120409.ord.wpd

finding drug evidence in the apartment. Barrington remained in the living room while Meyer searched for and found the cocaine and drug paraphernalia in the bedroom.

Meyer collected the scales, cocaine, marijuana, and baggies, placing them in plastic bags for transport to the police storage facility. Either outside the Ash apartment, at the property room, or in Barrington's office, Barrington, and other officers, handled the disguised scale to examine what Meyer and Barrington described as a novel design. Meyer then packaged the scales in manilla envelopes and secured the envelopes by licking their flaps. Meyer submitted both scales for fingerprint analysis. On the request form, he asked technicians to compare any latent prints they found to Armstrong's and the Defendant's.

Jodie Dewey, the fingerprint analyst assigned to Meyer's request, uncovered two prints on the disguised scale ("Item No. 6"). On December 17, 2007, she identified one, located on the inside cover, as belonging to the Defendant. The other was on the weighing surface of the scale and matched neither the Defendant nor Armstrong, and on December 21, 2007, she compared the unknown print to those contained in the FBI's AFIS database. This endeavor matched the print to Barrington. Dewey prepared an AFIS hit report resolving the identity of the unknown print. She also composed a "got-ya" letter informing Barrington that he touched an item of evidence. Dewey sent both these documents through the county's interoffice mail system, the letter addressed to Barrington, and the comparison report to the Records Department for electronic archival. She did not record the "got-ya" letter in the logbook kept at her office. She resealed the envelopes with evidence tape and returned the items to the police property room.

On April 18, 2008, Barrington sought an arrest warrant for the Defendant and prepared an affidavit based on the cocaine found at the Ash apartment. On June 13, 2008, officers executed the arrest warrant and detained the Defendant in his car while he was driving away from another apartment leased by Armstrong. A search of the vehicle uncovered nearly two grams of crack cocaine. Based on the drugs in the

**ORDER DENYING MOTIONS TO DISMISS & SUPPRESS** \* 3

deny dismiss 20120409.ord.wpd

Defendant's vehicle, officers applied for a warrant to search that other apartment, where they discovered a substantial quantity of crack cocaine and more paraphernalia. This evidence, excluding that found in the Ash apartment, underlies the superseding indictment in this case. The Ash apartment evidence formed the basis for a state cocaine possession prosecution.

As the trials in the Defendant's state and federal cases approached, state prosecutor Larry Haskell asked Barrington to submit the scales found at the Ash apartment to the Washington State Patrol Crime Lab for testing. Barrington's request, dated October 9, 2008, noted that the scales appeared to contain cocaine residue, and Devon Hause, a WSP forensic scientist, confirmed they did. The envelopes were again resealed and delivered back to the police property room. The Defendant argues that the types and number of evidence tape on the disguised scale's envelope requires the Court to find that Barrington tampered with the scale, but the Court credits the myriad testimony that it is common for items to be opened and resealed several times during an investigation. Even the Defendant's expert testified that cocaine residue, if planted, must have been done on November 30, 2007, negating the significance of the different seals placed on the envelopes after that date.

Barrington either did not receive or did not remember receiving the "got-ya" letter Dewey sent him. Five days prior to trial, an interview with Dewey revealed that she discovered Barrington's fingerprint on the disguised scale, which formed the basis for this Court granting the Defendant a new trial. At some point afterwards, the state prosecutor obtained a copy of the "got-ya" letter in a manner that is not established in the evidence.

Meyer did not note the presence of cocaine residue on the scales. Barrington prepared the only document that describes the presence of cocaine residue on the scales. Barrington on two occasions said that he intentionally touched the scale on which his fingerprint was found. Barrington wanted to pressure McDuffie to talk to him candidly about the Adama Walton murder.

**ORDER DENYING MOTIONS TO DISMISS & SUPPRESS** * 4

deny dismiss 20120409.ord.wpd

From these facts, the Defendant asks the Court to conclude that Barrington and others engaged in a massive scheme to frame the Defendant.

## ANALYSIS

**A. Evidentiary Issues**

The Court first addresses two evidentiary matters that have arisen in the course of analyzing the merits of the Defendant's motions.

### 1. Government's Supplemental Affidavits and Exhibit

At the conclusion of the April 3, 2012, hearing, the Court asked the Government to provide additional written argument interpreting the number and types of tapes used to seal the drug scale envelopes. The following day it filed two additional affidavits and a video recording, to all of which the Defendant objects as improper given he is not permitted to present additional evidence. The Court sustains the Defendant's objection and did not consider the Government's additional materials in rendering its decision.

### 2. Defendant's Expert Testimony

The Defendant offers the report and testimony of Winthrop Taylor, a police veteran and law enforcement procedures expert. Taylor reviewed most of the record evidence and made conclusions about the propriety of Barrington's and others' actions and also several inferences therefrom. The Court has discretion to permit expert testimony "in the form of an opinion or otherwise" if his "specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue." FRE 702; *see also* Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 592-94 (1993); Kumho Tire Co. v. Carmichael, 526 U.S. 137, 148 (1999).

Here, the Court finds it appropriate to limit the weight it gives to Winthrop's testimony. His experience and credentials qualify him to testify as a police procedure expert in the form that testimony traditionally takes. United States v. Hankey, 203 F.3d 1160, 1169 (9th Cir. 2000); *see also* United States v. Thomas, 74 F.3d 676, 682 (6th Cir. 1996) ("Courts have overwhelming found police officer's expert testimony

**ORDER DENYING MOTIONS TO DISMISS & SUPPRESS** \* 5

admissible where it will aid the jury's understanding of an area, such as drug dealing, not within the experience of the average juror."). Testimony in this area generally is confined to "commonly used police procedures, identifying specific standards by which the jury [can] measure the [officer's] actions." Butera v. Dist. of Columbia, 235 F.3d 637, 658-59 (D.C. Cir. 2001). Winthrop testifies that, in his opinion, Barrington's and other officers' performance fell below accepted standards of police practice (*e.g.*, that Barrington violated procedure by leaving his fingerprint on an item of evidence). These opinions are proper expert testimony.

From these conclusions, however, Winthrop also broadly infers that there is "conclusive circumstantial evidence that Detective Barrington deliberately tampered with the evidence in this criminal case," and that "Barrington was attempting to coerce McDuffie to testify that he had witnessed [a murder]." Distilled to their core, those inferences are based not on any specialized knowledge, but rather on Winthrop's assessment of Barrington's motive, opportunity, and credibility, all of which are traditional concepts within the experience of an average trier of fact. Therefore, they are not the proper subject of expert testimony. FRE 702. To the extent Winthrop's testimony went further than his opinion that certain actions failed to conform to accepted law enforcement standards, the Court gives it little weight.[2]

**B. Motion to Suppress**

Two arguments comprise the motion to suppress: One that, on its face, the warrant affidavit fails to recite probable cause to arrest the Defendant for cocaine possession, and two, that Barrington's statement in his affidavit that officers found cocaine in the Ash Street apartment was intentionally or recklessly false. Because execution of the arrest warrant, and the search incident thereto, recovered cocaine

---

[2]For example, Winthrop makes several references that Barrington's version of events is "absurd" or otherwise not believable, but experts are not permitted to opine on the credibility of other witnesses. United States v. Binder, 769 F.2d 595, 602 (9th Cir. 1985). His report also contains several legal opinions that the Court disregarded. Hanharter v. Provident Life, 373 F.3d 998, 1016 (9th Cir. 2004).

**ORDER DENYING MOTIONS TO DISMISS & SUPPRESS** \* 6

deny dismiss 20120409.ord.wpd

evidence in the Defendant's car, which in turn supported the search warrant application for the Walnut Street apartment, suppression of the arrest warrant would require suppressing nearly all the government's evidence in this case. For the reasons below, however, the Court denies the motion.

**1. The Arrest Warrant Supports Probable Cause on its Face**

First, the Defendant argues that the arrest warrant lacks probable cause even with reference to the crack cocaine found in the bedroom of the Ash apartment. Probable cause exists when there is a "fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). It is a fluid concept turning on the assessment of probabilities in particular factual contexts, and it is thus made after the Court considers the totality of the circumstances. United States v. Bishop, 264 F.3d 919, 924 (9th Cir. 2001). The Court's review is limited to the four corners of the affidavit to determine whether a "substantial basis [existed] for concluding that probable cause existed." United States v. Seybold, 726 F.2d 502, 503 (9th Cir. 1984). Thus, the magistrate's decision is accorded considerable deference. Id.

Barrington applied for and received an arrest warrant for possession of crack cocaine. In Washington, either actual or constructive possession is sufficient to sustain a conviction under RCW 69.50.4013, the latter requiring the defendant to have dominion and control over the drugs or the premises where they are found. State v. Staley, 123 Wn.2d 794, 504-05 (1994). Dominion and control need not be exclusive and can be established by circumstantial evidence. State v. Weiss, 73 Wn.2d 372, 375 (1968) (affirming drug possession conviction where defendant was one of two people living in house, despite other frequent overnight visitors). Here, the Defendant argues probable cause is lacking because the affidavit contains no evidence that he, as opposed to Armstrong, was the individual who exercised control over the cocaine.

Although the evidence recited in the affidavit might fail to establish possession during trial, probable cause to arrest a defendant is a lesser standard than the one to

**ORDER DENYING MOTIONS TO DISMISS & SUPPRESS** * 7

deny dismiss 20120409.ord.wpd

convict him. "Probable cause does not require proof beyond a reasonable doubt of every element of a crime. Rather, probable cause exists where under the totality of the circumstances known to the officer, a prudent person would have concluded that there was a *fair probability* that the suspect had committed or was committing a crime." United States v. Noster, 590 F.3d 624, 629-30 (9th Cir. 2009) (internal citation omitted) (emphasis added). Probable cause can exist to believe that one person among a group is in constructive possession of contraband, even if other individuals have access to it.

In Maryland v. Pringle, the Supreme Court found probable cause existed to arrest one of three occupants of a car for cocaine possession after police found drugs in the vehicle. 540 U.S. 366 (2003). Despite the other two passengers having access to the contraband, the Court held that "a reasonable officer could conclude that there was probable cause to believe Pringle committed the crime of possession of cocaine, *either solely or jointly*." Id. at 372 (emphasis added). The Court rejected Pringle's argument that police relied only on his proximity to the drugs to arrest him. In doing so, it distinguished cases that found probable cause lacking to arrest one among a group when police had additional information to deduce which of the several potential individuals committed the crime. *See* United States v. Di Re, 332 U.S. 581, 592-94 (1948) (holding that probable cause did not exist to arrest third occupant in vehicle where police had prior information that the other two were involved in the criminal conduct at issue).

In another similar case, the First Circuit found probable cause to arrest one of two individuals for unlawful possession of a firearm after police saw both fleeing the location where the gun was found. United States v. Jones, 432 F.3d 34, 41-42 (1st Cir. 2003) (analyzing under Massachusetts law defining constructive possession as "knowledge coupled with the ability and intention to exercise dominion and control"). Officers did not see either of the two men in actual possession of the gun, and Jones argued that it was his companion's. The court held that probable cause to arrest was

**ORDER DENYING MOTIONS TO DISMISS & SUPPRESS** * 8

not defeated merely because the other man could have possessed the gun; it was enough that Jones had the opportunity to do so. Drawing a distinction between the probable cause and reasonable doubt standards, the court explained that its holding did "not imply that the above evidence would necessarily suffice to sustain a finding that Jones was guilty beyond a reasonable doubt of the gun possession charge. Probable cause, however, does not require evidence sufficient to convict the individual, but merely enough to warrant a reasonable belief that he was engaging in criminal activity." Id. at 43 (internal citation omitted).

Here, the warrant affidavit presents enough evidence to support a reasonable belief that the Defendant was in possession of crack cocaine. It states that the Defendant was one of two individuals present in an apartment where the cocaine was found in plain view. The cocaine lay next to a drug scale, indicating that it was about to be consumed, measured, or otherwise handled. Police could infer from the potent odor of marijuana in the apartment—a statement in the affidavit that the Defendant has not challenged—that its only two occupants knew drugs were present in the home. These facts present a "fair probability" that the Defendant could "exercise dominion and control" over the cocaine.

Finally, even if the warrant affidavit was technically deficient, as the above analysis demonstrates it was not "so lacking in indicia of probable cause" as to make reliance on it to arrest the Defendant objectively unreasonable. United States v. Leon, 468 U.S. 897, 923-26 (1984). The good faith exception to the exclusionary rule further shields the evidence uncovered during the arrest from suppression. Id.; *see also* Arizona v. Evans, 514 U.S. 1, 15 (1995).

### 2. The Evidence is Not Sufficient to Prove that Barrington or Meyer Planted Cocaine at the Ash apartment.

The meat of the Defendant's motion is his allegation that Barrington or Meyer, under Barrington's direction, brought cocaine to the Ash apartment and feigned its "discovery" in order to charge the Defendant to coerce his testimony in the unrelated criminal matter. If true, Barrington perjured himself in the arrest warrant affidavit

**ORDER DENYING MOTIONS TO DISMISS & SUPPRESS** \* 9

necessitating its suppression. <u>Franks v. Delaware</u>, 438 U.S. 154 (1978). The Government, defense expert, and Barrington agree that Barrington touched the scale on November 30, 2007. The Defendant theorizes that Barrington left his print when he deposited the rock of cocaine on the scale, though the Defendant simultaneously argues that it was Meyer, not Barrington, who planted the evidence. This inconsistency highlights the recurring problem in his two motions, which are couched in possibilities rather than probabilities, the latter the standard he must meet. <u>Id</u>. at 156.

In any event, the Court rejects the Defendant's version of events. The Defendant's testimony at the first trial that cocaine was not in the Ash apartment is the only evidence that either officer is responsible for its presence. Against that self-serving statement is Armstrong's testimony that she and the Defendant were cocaine dealers on November 30, 2007, that it was not surprising officers found cocaine in the house, and that the Defendant continued to sell cocaine thereafter. Moreover, the substantial quantities of cocaine in the Defendant's car and the Walnut apartment found in June, 2008, buttress the conclusion that officers did not bring cocaine onto the property the previous November.

The Court finds that Barrington touched the scale while he and other officers were examining it after Meyer removed it from the Ash apartment and that no officer planted cocaine evidence that day. The officers' testimony to that effect was credible. Therefore, Barrington's arrest warrant affidavit was not a "deliberate falsehood" or made "in reckless disregard for the truth," <u>Id</u>. at 171-72, and suppression is denied.

**C.  Motion to Dismiss**

In his motion to dismiss, the Defendant argues again that Barrington or Meyer planted cocaine evidence in the Ash apartment but goes further that Barrington also attempted to cover up his misconduct by, among other things, planting more cocaine residue on the disguised scale, intercepting official records, and hiding evidence of his identified fingerprint. All these actions, the Defendant argues, constitute outrageous

**ORDER DENYING MOTIONS TO DISMISS & SUPPRESS** * 10

deny dismiss 20120409.ord.wpd

government conduct and violate due process. An indictment violates due process and must be dismissed when the government's conduct is "so grossly shocking and so outrageous as to violate the universal sense of justice," which occurs only in the "extreme cases in which the government's conduct violates fundamental fairness." United States v. Stinson, 647 F.3d 1196, 1209 (9th Cir. 2011). Dismissal is disfavored, however, and should be exercised only in the "most egregious cases." United States v. Haynes, 216 F.3d 789, 796 (9th Cir. 2000). The Court should elect a different remedy in all other circumstances.

Tampering with and planting evidence are the types of shocking and outrageous conduct that would warrant dismissal. As already stated, the Court does not find that either Barrington or Meyer planted cocaine at the Ash apartment. This was the lynchpin in the Defendant's theory. Without it the motive for Barrington's alleged remaining actions—hiding his "got-ya" letter, conspiring to intercept and destroy the AFIS hit report, and planting residue on the scale—evaporates. Moreover, the extent of the conspiracy, which at the hearing was expanded by defense counsel to include Meyer, O Brien and an unidentified records clerk, is simply not credible.

Finally, even if Barrington had attempted to hide his "got-ya" letter (which the Court does not find), that isolated misconduct does not warrant dismissal of the entire action, especially when it has no relation to the cocaine, bulk cash, and drug paraphernalia that underlie the charges here.

[*space intentionally left blank*]

**ORDER DENYING MOTIONS TO DISMISS & SUPPRESS** \* 11

deny dismiss 20120409.ord.wpd

## **CONCLUSION**

For the reasons stated above, the Defendant's Motions to Dismiss and/or Suppress (ECF No. 348) are **DENIED**.

**IT IS SO ORDERED**. The District Court executive is directed to enter this order and provide copies to counsel.

**DATED** this 11th day of April, 2012.

*s/Robert H. Whaley*
ROBERT H. WHALEY
United States District Judge

**ORDER DENYING MOTIONS TO DISMISS & SUPPRESS** * 12

deny dismiss 20120409.ord.wpd